IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MESQUITE ASSET RECOVERY | § | |
| GROUP LLC, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | Civil Action No. 3:24-CV-0740-D |
| | § | |
| CITY OF MESQUITE, TEXAS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action, plaintiffs Mesquite Asset Recovery LLC, Verde Center Partners, HQZ Partners, L.P., Lang and Company, LLC, and MCG-124, LLC (collectively, "plaintiffs," unless the context indicates otherwise) sue defendant City of Mesquite, Texas (the "City"), asserting federal-law takings and declaratory judgment claims and various pendent state-law claims. The City moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state claim on which relief can be granted. For the reasons that follow, the court grants the motion as to plaintiffs' federal-law claims, and declines, in its discretion, to exercise supplemental jurisdiction over plaintiffs' pendent state-law claims and remands those claims to state court.

I

This lawsuit involves a dispute between plaintiffs[1] and the City about whether the City

---

[1]HQZ Partners, L.P. purchased and developed the subject tract of land with its affiliates, MCG-124, LLC and Lang and Company, LLC. The three later assigned their

is obligated to reimburse plaintiffs for certain public improvements that plaintiffs made to a tract of land.[2]

In 2008, plaintiffs contracted with the City to acquire a tract of land situated on approximately 60.31 acres in the City of Mesquite, between Peachtree Road and the access road to Interstate-635, which is bisected by the South Mesquite Creek (the "Property"). Plaintiffs agreed to make certain public improvements to the Property. They constructed a multi-lane vehicular bridge, with a hike and bike trail, across the South Mesquite Creek. And they undertook to build "a mixed-use medical complex . . . that would consist of a wellness center and medical office facilities along with restaurant and commercial development." Am. Compl. ¶ 39. In return, the City promised under the Master Development Agreement (the "MDA") to reimburse plaintiffs "for [their] cost[s] spent on those public improvements . . . approved . . . by the City[.]" *Id.* ¶ 54.

Under the MDA, if the MDA terminated, so too would the City's reimbursement obligation. Under § 6.9(b), the MDA "automatically terminated, by its terms, five (5) years after its effective date unless" certain conditions precedent occurred, including, in pertinent

_____

rights and interests to Verde Center Partners. Thereafter, Mesquite Asset Recovery LLC "acquired, by assignment, all rights, claims and causes of action asserted" in the instant action. Am. Compl. ¶ 25.

[2]The court recounts the background facts favorably to plaintiffs as the nonmovants. In deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s].'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (addressing Rule 12(b)(6) standard)).

part, that plaintiffs successfully obtained the requisite permits from the City.  *Id.* ¶ 62.

The instant dispute arose when the City required plaintiffs to obtain a Conditional Letter of Map Revision ("CLOMR") from the Federal Emergency Management Agency ("FEMA").  A CLOMR is "simply an advisory opinion or comment from FEMA indicating the proposed effect of [a] proposed project on the hydraulic characteristics of a flooding source."  *Id.* ¶ 73.  Although all but 17 acres of the Property are within a federally designated flood zone, the City initially granted plaintiffs a variance from the CLOMR requirement.  But as the MDA's automatic-termination deadline approached, the City advised plaintiffs for the first time that it would not honor the variance, and that plaintiffs must "obtain a CLOMR from FEMA as a prerequisite to obtaining the remainder of the development permits required for the [p]roject[.]"  *Id.* ¶ 81.

This change in position effectively relieved the City of its reimbursement obligations.  "[T]he City's last-minute decision to now require an approved CLOMR prior to being able to go forward with the platting and permitting required to develop the [p]roject made it impossible for [plaintiffs] to comply with the compliance deadline set forth in Section 6.9(b) of [the MDA]."  *Id.* ¶ 81.  And "[a]ccording to correspondence from attorneys representing the City, [plaintiffs'] inability to meet those compliance guidelines terminated the City's reimbursement obligations contained in the [MDA]."  *Id.* ¶ 82.

Plaintiffs were unable through pleas to the City to obtain extensions of the deadlines for the conditions precedent to the MDA's automatic termination.  "On June 5, 2023 the City Council met and as part of its regularly scheduled meeting, voted unanimously not to extend

the deadlines as requested[.]" *Id.* ¶ 91.  Plaintiffs "formally appealed that decision, by twice requesting in writing that the City Council reconsider its June 5, 2023, decision not to extend those performance deadlines, to no avail."  *Id.* ¶ 93.  They also "asked if the City had an alternate reimbursement mechanism in mind for reimbursement of [their] cost for those approved public improvements, but no such offer for compensation has yet been forthcoming from the City."  *Id.* ¶ 96.

Plaintiffs sued the City in Texas state court, asserting federal- and state-law claims. The City removed the case to this court based on federal question jurisdiction.  Plaintiffs filed an amended complaint, asserting that the City took their property without just compensation, in violation of Article I, § 17 of the Texas Constitution and the Fifth and Fourteenth Amendments to the United States Constitution; violated their vested rights under Tex. Local Gov. Code Ann. §§ 245.001, *et seq.*; and breached the MDA contract.  Plaintiffs also seek a declaratory judgment under Chapter 37 of the Texas Uniform Declaratory Judgments Act. The City now moves to dismiss under Rule 12(b)(6) for failure to state a claim on which relief can be granted.  Plaintiffs oppose the motion.  The court is deciding the motion on the briefs, without oral argument.

## II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiffs'] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original)

(internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).  To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

### III

The court turns first to plaintiffs' federal-law takings claim.

### A

The Fifth Amendment, as incorporated against state and local governments under the Fourteenth Amendment, forbids the taking of private property for public use without just compensation.  As courts have recognized, however, taking claims rarely arise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than in its sovereign capacity.  As the

> Supreme Court has repeatedly reminded us, the two characters which the government possesses as a contractor and as a sovereign cannot be fused; nor can the government while sued in the one character be made liable in damages for its acts done in the other.

*Preston Hollow Cap., L.L.C. v. Cottonwood Dev. Corp.*, 23 F.4th 550, 553 (5th Cir. 2022) (cleaned up); *see also Horowitz v. United States*, 267 U.S. 458, 461 (1925); *Braden v. Tex. A & M Univ. Sys.*, 636 F.2d 90, 93 (5th Cir. Unit A Feb. 1981) (per curiam) (citations omitted) ("Just as Section 1983 does not create a cause of action for every state-action tort, it does not make a federal case out of every breach of contract by a state agency."); *Massó-Torrellas v. Mun. of Toa Alta*, 845 F.3d 461, 467-68 (1st Cir. 2017) (collecting cases that stand for the proposition that "when a municipality acts in a contractual or proprietary capacity, actions such as contract termination or detention of property under the contract that would constitute a simple breach of contract when a non-governmental entity is involved do not become a constitutional violation simply because the contracting party is a municipality").

## B

The City contends that, despite plaintiffs' bare allegation that the City exercised its "sovereign or governmental powers," their so-called takings claim is but a "plain-vanilla" breach-of-contract claim. D. Br. (ECF No. 28) at 9, ¶ 3.06. "[T]he Court is not required to accept as true" plaintiffs' "legal conclusions masquerading as factual allegations[.]" *Id.* at 9, ¶ 3.06. And plaintiffs' "factual allegations demonstrate only that [the City] acted in a commercial capacity by declining to amend the term of a contract for [plaintiffs'] benefit."

*Id.* at 10, ¶ 3.10.  Thus "[e]ven accepting as true that the City's alleged 'change in position' somehow prevented [plaintiffs'] timely 'performance,' [plaintiffs'] factual allegations still amount to nothing more than a breach of contract claim and not a compensable taking of an independently created and protected property right."  *Id.* at 11, ¶ 3.13.

In response, plaintiffs assert that their "properly pled inverse condemnation claims are not an improper fusion of their takings claim and a breach of contract claim."  Ps. Resp. (ECF No. 29) at 2.

> Contrary to the City's assertion, [plaintiffs'] takings claims are based on the City's interference with [plaintiffs'] reasonable investment-backed expectations and legitimate claims of entitlement under both state and federal law due to the City's thwarting of [plaintiffs'] previously approved development and reimbursement rights, resulting from the City's disregard of its own approved development permits and variances previously granted to [plaintiffs], *coupled with* the City's bad-faith termination of the sole source for reimbursement recognized by the City (the MDA).

*Id.* at 4 (emphasis in original).

C

Plaintiffs have not plausibly pleaded a federal-law takings claim because they have not sufficiently alleged that the City acted in its sovereign, rather than its commercial, capacity.  Although the court "accept[s] all well-pleaded facts as true," it does not "accept as true [plaintiffs'] conclusory allegation[]" that the City acted in its sovereign capacity.  *See King v. Baylor Univ.*, 46 F.4th 344, 356 (5th Cir. 2022).  "Here, the record does not contain any plausible allegations that the [City] was acting in a sovereign capacity pursuant to any

statute, ordinance, regulation, or custom" when it allowed the MDA to expire. *Massó-Torrellas* , 845 F.3d at 469. Rather, plaintiffs' takings claim rests exclusively on the theory that the City breached the MDA when it reneged on an earlier parol agreement granting plaintiffs a variance from the CLOMR requirement, and when it refused to grant a good-faith extension of the deadlines for the conditions precedent to the MDA's impending automatic termination. But neither the City's advising plaintiffs that a city ordinance required them to obtain a CLOMR, nor the City Council's June 5, 2023 unanimous resolution not to extend the deadlines, qualifies as a sovereign act. *See Preston Hollow*, 23 F.4th at 552, 554 (concluding that neither Texas non-profit local government corporation's "letter from counsel regarding the potential invalidity of the Loan Agreement" under state law, its "various pretrial statements regarding the Loan Agreement," nor its passage of "a resolution stating that its arrangement with [takings claimant] was based on 'a legally defective transaction'" qualified as sovereign acts). Accordingly, "[b]ecause all of the misconduct alleged in the complaint involves commercial and not sovereign acts, any claim that [plaintiffs] may have asserted should be a breach of contract claim, not a taking claim." *Id.* at 554 (citation and internal quotation marks omitted). And because plaintiffs did not plead their breach of contract claim in the alternative, dismissal of their takings claim is appropriate. *See id.* (citation, alteration, and internal quotation marks omitted) ("Of course, a plaintiff may plead, in the alternative, both a breach of contract claim and a takings claim in the same complaint. But when a plaintiff brings only a takings claim, and that claim sounds in contract, dismissal of the takings claim is appropriate.").

IV

The court turns next to plaintiffs' declaratory judgment claim.

Although plaintiffs filed their claim in state court under the Texas Declaratory Judgment Act, "[w]hen a declaratory judgment action filed in state court is removed to federal court, that action is in effect converted into one brought under the federal Declaratory Judgment Act[.]" *Ondova Ltd. v. Manila Indus., Inc.*, 513 F.Supp.2d 762, 775 n.12 (N.D. Tex. 2007) (Fitzwater, J.). This court has dismissed declaratory judgment actions where "[t]he core issues of th[e] controversy concern[ed] whether the parties entered into enforceable contracts and, if so, whether defendants breached the contracts." *Kougl v. Xspedius Mgmt. Co.*, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005) (Fitzwater, J.). It reasoned that "[t]hese questions [would] be resolved in the context of breach of contract actions." *Id.* As now framed, plaintiffs' declaratory judgment action essentially duplicates their breach of contract claim. That is, plaintiffs seek a declaratory judgment to the same effect as their breach of contract action. Accordingly, the court dismisses this claim under Rule 12(b)(6). *See, e.g., Landscape Design & Constr., Inc. v. Transport Leasing/Contract, Inc.*, 2002 WL 257573, at *10 (N.D. Tex. Feb. 19, 2002) (Fitzwater, J.) (dismissing declaratory judgment action that sought resolution of substantive claims that were already basis of lawsuit).

V

Finally, the court turns to plaintiffs' remaining claims, all of which are state-law causes of action.

This court has the discretion to remand a case that was removed based on federal question jurisdiction where the federal question claims have dropped out of the case and the parties are not diverse citizens. *See, e.g.*, *Burnett v. Petroleum Geo-Servs., Inc.*, 2013 WL 1723011, at *5 (N.D. Tex. Apr. 22, 2013) (Fitzwater, C.J.) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)); *see also Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 338-39 (5th Cir. 1999) (affirming remand of state claims after plaintiff's amended complaint dropped claim supporting federal question jurisdiction). To determine whether to exercise jurisdiction or to remand, the court balances "the statutory factors set forth by 28 U.S.C. § 1367(c)," "the common law factors of judicial economy, convenience, fairness, and comity," and the threat of "improper forum manipulation." *Burnett*, 2013 WL 1723011, at *5 (citing *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011)). Moreover, in this circuit "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial[.]" *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). Because the court lacks diversity jurisdiction, only state-law claims remain, and the federal claims have dropped out early in the case (the case has only been pending in this court since March 28, 2024), the court exercises its discretion to remand the remaining state-law claims

-10-

to state court.[3]

\* \* \*

For the reasons explained, the court grants the City's June 11, 2024 motion to dismiss as to plaintiffs' federal-law claims and dismisses plaintiffs' federal-law claims with prejudice, declines to exercise supplemental jurisdiction over their state-law claims and remands those claims to the 191st Judicial District Court of Dallas, County, Texas, and denies as moot plaintiffs' motions to strike and for leave to file a surreply.

The clerk shall effect the remand according to the judgment filed today.

**SO ORDERED**.

October 23, 2024.

SIDNEY A. FITZWATER
SENIOR JUDGE

_____

[3]Plaintiffs also move to strike the City's reference in its reply to a June 5, 2023 video recording of a City Council meeting, and for leave to file a surreply in opposition to the City's motion to dismiss.  Plaintiffs contend that the video is "outside of what can be properly considered in a motion to dismiss[.]"  Ps. Br. (ECF No. 34) at 3, ¶ 6.  And they maintain that their opposition response could not address the City's admission in its answer that it granted plaintiffs a variance from the CLOMR requirement because the City filed its answer after plaintiffs had already filed their responsive pleading.  Because the video recording and the City's admission are immaterial to the court's resolution of the City's motion to dismiss, the court denies plaintiffs' motions to strike and for leave to file a surreply without prejudice as moot.  *See Samurai Glob., LLC v. Landmark Am. Ins. Co.*, 2024 WL 1837960, at \*2, n.3 (N.D. Tex. Apr. 26, 2024) (Fitzwater, J.) ("Because the court is not considering the evidence that Landmark challenges, it denies Landmark's motion for leave to file a surreply without prejudice as moot.").

-11-